# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ROB PARSONS,

    Plaintiff,

v.

BOARD OF TRUSTEES OF THE NEVADA RESORT ASSOCIATION - I.A.T.S.E. LOCAL 702 RETIREMENT PLAN, *et al*.,

    Defendants.

Case No. 2:12-cv-00299-LDG (VCF)

**ORDER**

The plaintiff, Rob Parsons, alleges that he was a participant in a retirement plan administered by the defendants Board of Trustees of the Nevada Resort Association - I.A.T.S.E. Local 702 Retirement Plan *et al.* ("Trustees") and for which defendant Zenith Administrators ("Zenith") acts as the Administrative Office. He further alleges that the plan was modified on June 15, 2010, to reduce the early retirement benefit, that the modification included a grandfather provision, that he was uncertain whether he qualified under the grandfather provision, that he asked an employee of Zenith for guidance, that the employee stated Parsons was qualified for the grandfather provision, and that based on the representation he applied for early retirement and retired. Subsequent to his retirement, he

alleges that the same employee informed him that he did not qualify under the grandfather provision and that his retirement benefit would be calculated pursuant to the new rule. Upon learning that his retirement benefit would be calculated under the new rule, Parsons returned to work at his prior job, but received a lower-paying position. Parsons alleges a claim against all defendants for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq.,* and a second claim against Zenith for negligence.  The Trustees move to dismiss the claim for breach of fiduciary duty (#14). Zenith joins in the motion as to the claim for breach of fiduciary duty and further moves to dismiss the state law negligence claim, arguing that the claim is preempted by ERISA (#18). Parsons opposes both motions (## 16, 22). Having read and considered the papers and complaint, the Court will grant the motions.

**I. Motion to Dismiss**

A complaint may be dismissed when the factual allegations are not plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief must contain a "short plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. Proc. 8(a)(2), in order to give the defendant fair notice of what the claim is and the grounds upon which is rests. *Twombly*, 550 U.S. at 555. Thus, the court may dismiss a claim for relief for "failure to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6).

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The Supreme Court in *Ashcroft v. Iqbal* clarified the two-step approach district courts should follow in reviewing a motion to dismiss. 556 U.S. 662 (2009).  First, the court must "take the [factual] allegations as true, no matter how skeptical the court may be. *Iqbal,* at 696.  However, labels, conclusions, and formulaic recitations of legal elements do not meet the level of

2

Case 2:12-cv-00299-LDG-VCF   Document 27   Filed 08/13/12   Page 3 of 12

plausibility. *Id.,* at 678. Second, viewing the facts in the light most favorable to the nonmoving party, the court should determine whether the facts rise to the level of plausibility. *Id.*, at 679.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.*, at 567.

**II. Background**

As alleged by Parsons in his complaint, he worked as a stagehand for over 30 years and was a participant in the retirement plan between the I.A.T.S.E. Local Union 702 and the LV Theatrical Group, Inc.  Plan documents identified Zenith as the Administrative Office for the plan, and further directed participants to contact the Administrative Office with questions about benefits.

On June 15, 2010, the Trustees amended the retirement plan to reduce benefits paid for early retirement.  The modification, however, included a grandfather clause, which stated:

> This change will not apply to any Participant who satisfies all three of the following requirements before August 1, 2010: is (A) eligible for early retirement, (B) retires (a bona fide separation from Covered Employment), and (C) applies for an early retirement pension.

Parsons alleges he was uncertain whether or not he would qualify for the grandfather position. As a result, he contacted Henry Dobbs in Zenith's Pension Department and informed Dobbs that he would not turn 55 until October 26, 2010. In

3

response, Dobbs stated that he would have to wait until after the Trustees' July 1, 2010 meeting to determine whether Parsons qualified under the grandfather provision. On July 2, 2010, Parsons met with Dobbs to again discuss whether he qualified for the grandfather provision. Parsons alleges that he reminded Dobbs that he was 54, and would not turn 55 until October 26, 2010. Dobbs responded that Parsons qualified under the grandfather provision because he would be 55 by the time he received his first retirement check on November 1, 2010. Based on Dobbs' representations, Parsons retired and applied for an early retirement pension before August 1, 2010.

After Parsons retired, Dobbs called and informed Parsons that, while he qualified for early retirement under the plan, he did not qualify for the grandfather provision. Accordingly, Parsons would receive an early retirement pension benefit of $1,900 a month rather than $3,959.96. Parsons appealed the decision, which appeal the Trustees denied. On October 11, 2010, Parsons informed Zenith that he no longer intended to continue with the retirement process.  However, when he returned to work the theater placed him into a lower-paying assistant position causing him to suffer a significant wage loss.

**III. Breach of Fiduciary Duty**

Parson's first claim against the Trustees and Zenith is that they breached fiduciary duties under 29 U.S.C. §§ 1021 – 1022 in that the Trustees and Zenith owed a duty to provide information sufficiently accurate and complete to apprise him of his rights and benefits under the retirement plan. Fiduciary duties include a prudent-man standard of care to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

Considering Parsons' factual allegations in the light most favorable to him, he has not alleged sufficient facts permitting an inference of a plausible claim that the Trustees and Zenith breached their fiduciary duties. First, as to the Trustees, Parsons argues that he

4

1   "clearly identified in his complaint . . . that the Trustees breached . . . their duty of loyalty in
2   that they failed to provide him with the complete and accurate information he needed to
3   decide whether to retire, and by doing so violated 29 U.S.C. §§ 1021 & 1022, ERISA's
4   notice provisions."  Parsons' Opposition, at 6, ll 9-12.  While Parsons cites to paragraph 28
5   of his complaint, that paragraph does not contain any allegations supporting his assertion.
6   Rather, paragraph 28 recites only his allegation that the Trustees and Zenith owed him "a
7   prudent-man duty of care to disclose information sufficiently accurate and comprehensive
8   to apprise him of his rights and obligations under the Plan."  Parsons next asserts, in his
9   opposition, that the Trustees "sent notice that the Plan had been amended to reduce early
10  retirement benefits, but also provided a grandfather provision for qualifying under the old
11  Plan."  Parsons' Opposition, at 6, ll 17-19.  Parsons cites to paragraph 21 of his complaint,
12  but that paragraph alleges only that the Trustees amended the plan while providing a
13  grandfather provision.  Absent from paragraph 21 is any allegation that the Trustees sent a
14  notice of the plan amendment.  Absent from the complaint is any allegation that the
15  Trustees sent any communication to Parsons, or any allegation permitting a plausible
16  inference that such communication was both subject to and in violation of the requirements
17  of either §§ 1021 or 1022.

18          Second, as to Zenith, Parsons has not alleged facts permitting a plausible inference
19  that Zenith, through Dobbs, engaged in an oral communication that altered the terms of the
20  retirement.  The Supreme Court, in *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011),
21  stated that summary plan descriptions "provide communication with beneficiaries *about* the
22  plan, but that their statements do not themselves constitute the *terms* of the plan."
23  Furthermore, the Court stated:

24          [W]e have no reason to believe that the statute intends to mix the
            responsibilities by giving the administrator the power to set plan terms
25          indirectly by including them in the summary plan descriptions . . . .  To make
            the language of a plan summary legally binding could well lead plan
26          administrators to sacrifice simplicity and comprehensibility in order to

5

describe plan terms in the language of lawyers. *Id.* at 1877-1878. (citations omitted).

Further, even if Dobbs' statements were actionable under either §§ 1021 or 1022 had they been delivered in writing, such statements are not actionable as Parsons alleges they were delivered orally. The two decisions cited by Parsons in support of his claim against the defendants require written notices, 29 U.S.C. § 1021(f)(4)(B) or a summary plan description, 29 U.S.C. § 1022(a). In *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1182 (9th Cir. 2004) the appellate court required active misrepresentation "about the availability of future retirement benefits in an attempt to induce them to retire earlier than they otherwise would." Parsons' complaint lacks any factual allegations concerning an attempt to induce him to retire earlier than he otherwise might. Even in the light most favorable to Parsons, he has not made factual allegations stating a plausible claim for relief under claim for breach of fiduciary duty.

Third, the ERISA claim must also be dismissed as to both the Trustees and Zenith because, to the extent that Parsons argues that it was the grandfather provision of the plan amendment that was vague and ambiguous, the argument is without merit. While Parsons does allege in his complaint that "he was uncertain whether he was qualified for the grandfather provision," Complaint, at ¶22, neither his complaint nor his opposition advances any theory or argument indicating how the grandfather provision was vague and ambiguous. Parsons expressly alleges, in ¶24 of his complaint, that he met the second and third requirements of the grandfather provision. Thus, the grandfather provision was neither vague nor ambiguous as to either the second or third requirements necessary to avoid application of the amendment to the early retirement benefit. The allegations of Parsons' complaint further preclude a plausible inference that the grandfather provision was vague or ambiguous as to the first requirement: that a participant "is (A) eligible for early retirement" before August 1, 2010. In paragraphs 22 and 23, Parsons twice alleges that he

6

informed Dobbs, of Zenith, that he would not turn 55 until October 26, 2010. Neither of these allegations raise a plausible inference that the grandfather provision was ambiguous in its requirement of eligibility for early retirement prior to August 1, 2010. Rather, the allegations concerned whether Parsons would be eligible for early retirement prior to August 1, 2010, given that his 55th birthday would not occur until after that date. In sum, the only plausible inference from Parsons' own allegations is that the grandfather provision sufficiently disclosed, and was neither vague nor ambiguous in disclosing, that eligibility for early retirement prior to August 1, 2010, was a requirement to qualify for the grandfather provision.

As Parsons' present complaint fails to allege sufficient facts raising a plausible inference that either the Trustees or Zenith breached a fiduciary duty, dismissal of the ERISA claim is appropriate.

**IV. Remedies**

Parsons' ERISA claim also fails because he fails to allege facts or a theory on which appropriate equitable relief under ERISA can be granted. As recently established by the Supreme Court in *Amara*, Parsons is limited to seeking only a remedy in equity. As a suit brought pursuant to ERISA, Parsons is limited: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). While *Amara* recognizes the availability of the equitable remedies of reformation, surcharge, and estoppel, none of these three equitable remedies are available in the present matter.

**a. Reformation**

Regarding reformation, the Ninth Circuit recently stated "reformation is proper only in cases of fraud and mistake." *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (citing *Cont's Ins. Co. of N.Y. v. Cotton*, 427 F.2d 48, 53 (9th

7

Cir. 1970)). *Skinner* held that the discrepancy between a summary plan description and the terms of the plan did not manifest evidence of fraudulent inducement when the 2003 summary plan description contradicted the plan terms. 673 F.3d at 1166-67.  Furthermore, the Ninth Circuit refused to follow the dictum in *Amara* regarding reformation because in *Amara* "the Court suggested that reformation might be appropriate . . . because the district court had already found that the employer had 'intentionally misled its employees.'" *Id.* Similarly, the Ninth Circuit has also imposed two requirements in order to receive reformation: (1) hiding facts or affirmatively misrepresenting facts and (2) seeking a remedy that is not money damages for past harm. *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1075-76 (9th Cir. 2005) (distinguishing "equitable claims that seek to prevent future losses, which are permissible under ERISA, and those that seek past due sums, which are not") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988)).  The court in *Peralta* used strong language to describe the evidence required for misrepresentation: "[T]here is no evidence of a scheme either to hide the fact . . . or to affirmatively misrepresent the facts . . ..  There was no evidence of any intentional misleading or trickery, or of any active concealment . . .." *Id.*

In the case at bar, Parsons' request for reformation fails as he has not alleged facts raising a plausible inference of fraud, and his allegations of mistake do not rise to the level required by the Ninth Circuit in *Peralta*.  Though intent is not required, Parsons alleged no facts regarding the mistake except that Dobbs, of Zenith, incorrectly told him he qualified for early retirement when in fact he did not. Parsons has not alleged trickery, hiding facts, active concealment, or active misrepresentation, as *Peralta* requires.  As in *Skinner*, the contradiction in Zenith's statement and the terms of the amendment do not constitute evidence of fraudulent inducement.

### b. Estoppel

ERISA equitable estoppel is limited to situations where the wronged party can prove (a) the provisions of the plan at issue are ambiguous, and (b) oral representations interpreting the plan were made to the employee. *Qualls By & Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 845-46 (9th Cir. 1994). Parsons alleged that Dobbs made oral representations to him regarding whether he would meet the requirements for eligibility for early retirement prior to August 1, 2010. However, the provision that he has alleged is at issue--the grandfather provision–is not ambiguous in its requirement that a participant be eligible for early retirement prior to August 1, 2010. Therefore, his request for the equitable remedy of estoppel fails as alleged in the complaint.

### c. Surcharge

The *Amara* court ruled "appropriate equitable relief" traditionally means remedies "typically available in equity," and compensatory damages, "traditionally speaking, was legal, not equitable in nature." *Amara*, 131 S.Ct. at 1878 (quoting *Mertens*, 508 U.S. 248, at 255). However, the Supreme Court recognized an equitable monetary remedy called a "surcharge" against a trustee who breached a fiduciary duty. *Amara*, 131 S.Ct. at 1880. ("The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon a fiduciary." *Id.*) Even though surcharges are possible, they are not common and "common-law attempts 'to punish trustees for a breach of trust in damages . . . w[ere] soon abandoned." *Id.* Additionally, ERISA does not permit equitable remedies to seek past due sums, but only to prevent future losses. *Peralta*, 419 F. 3d at 1075. As alleged by Parsons in his complaint, he seeks damages for past harm; that is, Parsons seeks payment of benefits under the old rule, thereby failing the second part of the rule given in *Peralta*.

Therefore, considered in the light most favorable to Parsons, he has failed to allege facts supporting an equitable remedy available under 29 U.S.C. § 1132(a)(3).

**V. Negligence Claim**

Parsons' second claim for relief is a Nevada negligence action against Zenith only. Parsons asserts this claim in the alternative in the event that Zenith is determined to not be a fiduciary. Zenith has moved to dismiss the claim as preempted pursuant to both §§502(a) and 514(a) of ERISA. 29 U.S.C. §§ 1132(a), 1144(a). As alleged in Parsons' complaint, his claim for negligence is, at a minimum, preempted under §514(a).

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987), the Supreme Court held that when a lawsuit relates to an employee benefit plan, state law claims fall under the scope of and are preempted by ERISA (29 U.S.C. §1144(a)) unless the causes of action fall under the savings clause, 29 U.S.C. § 1144(b)(2)(A), which exempts state laws that regulate insurance from pre-emption. The phrase "relate to" carries its "broad common sense meaning" and an employee benefit plan relates to a state law if it has a (1) connection with or (2) reference to such plan. *Id*., at 47. see also *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009).   As recognized by Parsons, the Ninth Circuit provided the following guidance:

> The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee. Because of ERISA's explicit language, and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.

*General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) (internal citations omitted). Additionally, the Ninth Circuit recognized the objectives of ERISA to evaluate the "connection with" language, stating that "'[t]he basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" *Id.* at 1082. (citation omitted). This guidance is convincing in establishing that Parsons' negligence claim is preempted by §514(a).

As alleged by Parsons, in ¶14 of his complaint (which paragraph he incorporates into his negligence claim), "the Plan documents provide that . . . Zenith acts as the "Administrative Office" for the Plan." Paragraph 14 further alleges that the plan documents advise participants to contact the Administrative Office with questions about benefits. As Parsons further alleges, he "has been a Participant in the Plan since 1974 . . .." Complaint, ¶20. Parsons has not cited to any authority suggesting that ERISA does not govern the relationship between a plan participant and the entity identified in the plan as the administrative office of the plan, particularly when the plan documents direct participants to contact the administrative office with questions regarding benefits.

Parsons' argument that he has alleged the negligence count in the alternative, "in the event that Zenith is found not to be a fiduciary of the Plan" is unavailing for several reasons. Parsons has not offered any authority for the underlying premise of his argument: that ERISA governs the relationship between a participant and the entity designated by the plan as the "Administrative Office" only if it is a fiduciary relationship. In the language cited above from *Castonguay*, the Ninth Circuit did not indicate that ERISA regulates only fiduciary relationships. Parsons argues that the "entire point" of his negligence claim is that "[i]f Zenith is not a fiduciary of the plan, . . . then Parsons is entitled to the reasonable inference that Zenith provided information to him pursuant to a non-Plan agreement between Zenith and the Trustees." Parsons is incorrect. A determination that Zenith is not a fiduciary does not, by itself, establish that Zenith's relationship with either the Trustees or Parsons is not regulated by ERISA. As pointed out by Zenith, and not contradicted by Parsons, he has not alleged any facts from which a plausible inference can be drawn that a non-plan relationship exists between Zenith and either the Trustees or himself that is not regulated by ERISA. Parsons' reliance on *Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009) is misplaced. In *Paulsen,* the plan participants' negligence claim against the firm that provided actual services to the plan was not pre-empted. As stated by the court: "The

duty giving rise to the negligence claim [ran] from a third-party actuary, i.e., a non-fiduciary service provider, to the plan participants as intended third party beneficiaries *of the actuary's service contract.*" *Id.,* at 1083 (emphasis added).  The provision of actuarial services to a plan is not a relationship regulated by ERISA.  While the actuarial firm was a non-fiduciary service provider, the duty arose from the actuary's service contract.  Parsons has not alleged any facts suggesting that Zenith's relationship to himself is comparable to that of a third-party beneficiary to an actuarial services contract between an actuarial firm and a plan.  Rather, the facts alleged by Parsons in his complaint expressly allege a relationship between Zenith and the plan arising from the management or administration of the plan with respect to a plan participant.  Even assuming that Parsons' allegations somehow raise a plausible inference of a non-fiduciary relationship, those same allegations (which are the only allegations permitting an inference of a relationship) require a determination that the relationship is nevertheless regulated by ERISA.  As Parsons' negligence claim bears on an ERISA-regulated relationship, it is pre-empted by §514(a) and must be dismissed.  Accordingly,

THE COURT **ORDERS** that the Trustees' Motion to Dismiss (#14) is GRANTED;

THE COURT FURTHER **ORDERS** that Zenith Administrators, Inc.'s Motion to Dismiss (#18) is GRANTED;

THE COURT FURTHER **ORDERS** that, if plaintiff chooses to file an amended complaint, he must do so not later than 15 days from the date this Order is entered and served.

DATED this ___10___ day of August, 2012.

_____
Lloyd D. George
United States District Judge

12