1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **DISTRICT OF NEVADA**
10

11   ROB PARSONS,

12        Plaintiff,                            Case No. 2:12-cv-00299-LDG (VCF)

13   v.                                         **ORDER**

14   BOARD OF TRUSTEES OF THE
     NEVADA RESORT ASSOCIATION -
15   I.A.T.S.E. LOCAL 702 RETIREMENT
     PLAN, *et al*.,
16
         Defendants.
17

18

19
20        Rob Parsons was a participant in a retirement benefits plan administered by the

     Board of Trustees of the Nevada Resort Association – I.A.T.S.E Local 702 Retirement Plan
21
     (the "Trustees").  Zenith Administrators, Inc. ("Zenith") provided administrative services for
22
     the Plan. On June 15, 2010, the Trustees sent notice ("Notice") informing participants that
23
     the Plan had been modified, including a reduction in early retirement benefits, but that the
24
     modification would not affect those that qualified under a grandfather provision. Uncertain
25
     of whether he qualified for the grandfather provision, Parsons contacted Zenith. A Zenith
26

1  employee represented to Parsons that he qualified and, based on that representation,

2  Parsons applied for an early retirement pension and retired.

3       After Parsons officially retired, the Zenith employee informed Parsons that he did not

4  qualify for the grandfather provision and his benefit amount would be calculated under the

5  new rule. Parsons appealed to the Trustees and was denied. Parsons returned to work, but

6  was forced to accept a lower-paying position and a significant wage and benefit loss.

7  Parsons filed a Complaint against the Trustees and Zenith, which complaint was dismissed

8  with leave to amend. (#27). Parsons amended his complaint, alleging a claim against all

9  defendants for a breach of fiduciary duty under 29 U.S.C. §1104(a)(1), a claim against the

10  Trustees for breach of co-fiduciary duty under 29 U.S.C. § 1105, and an alternative claim

11  against Zenith for negligence. (#30).

12       The Trustees now move to dismiss (#33) for breach of fiduciary duty and breach of

13  co-fiduciary duty. Zenith also moves to dismiss (#34) for breach of fiduciary duty and

14  further for negligence. Parsons opposes both motions. (# 35, 36). Having read and

15  considered the papers and complaint, the Court will GRANT the motions.

16

17                                              **Motion to Dismiss**

18       A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) requires

19  courts to engage in a two-part analysis. <u>Ashcroft v. Iqbal</u>, — U.S. —, 129 S. Ct. 1937

20  (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). First, the courts accept only

21  non-conclusory allegations as true. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the

22  elements of a cause of action, supported by mere conclusory statements, do not suffice."

23  *Id.* (citing *Twombly*, 550 U.S. at 555). Federal Rule of Civil Procedure Rule 8 "demands

24  more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Id.* Federal

25  Rule of Civil Procedure Rule 8 "does not unlock the doors of discovery for a plaintiff armed

26  with nothing more than conclusions." *Id.* at 1950. The Court must draw all reasonable

1  inferences in favor of the plaintiff. *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949

2  (9th Cir. 2009).

3      After accepting as true all non-conclusory allegations and drawing all reasonable

4  inferences in favor of the plaintiff, the Court must then determine whether the complaint

5  "states a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at

6  555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

7  court to draw the reasonable inference that the defendant is liable for the misconduct

8  alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "is not

9  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

10  defendant has acted unlawfully." *Id.* A complaint that "pleads facts that are 'merely

11  consistent with a defendant's liability . . . 'stops short of the line between possibility and

12  plausibility of 'entitlement to relief.' ' " *Id.* (citing *Twombly*, 550 U.S. at 557).

13

14                              **Background**

15      Parsons has been a participant in the NEVADA ASSOCIATION'S THEATRICAL

16  STAGE EMPLOYEES I.A.T.S.E. LOCAL 702 RETIREMENT PLAN ("Plan") since he began

17  employment as a "stagehand" with LV Theatrical Group, Inc. in 1974. The Trustees are the

18  named fiduciaries of the Plan and are responsible for administering the Plan. Zenith

19  provides "certain administrative services for the operation of the Trust, " as per the

20  Administrative Services Contract ("Contract") between the Trustees and Zenith.

21      On or about June 15, 2010, The Trustees sent notice ("Notice") to the participants

22  informing them that the Plan had been modified, including a reduction in benefits. However,

23  the modification included a grandfather provision:

24          This change will not apply to any Participant who satisfies all three of the following
            requirements *before* **August 1, 2010**: is (A) eligible for early retirement, (B)
25          retires (a bona fide separation from Covered Employment), *and* (C) applies for an
            early retirement pension.
26

                                        3

1      Uncertain of whether he qualified for the grandfather provision, Parsons contacted

2  Zenith's Pension Department for guidance and informed Henry Dobbs ("Dobbs") that he

3  would not be 55 until October 26, 2010. In response, Dobbs stated that he would have to

4  wait until after the Trustees' July 1, 2010 meeting to determine whether Parsons qualified

5  under the grandfather provision. On July 2, 2010, Parsons met with Dobbs again to discuss

6  whether he qualified for the grandfather provision. Parsons again informed Dobbs that he

7  was currently 54 and would not be 55 until October 26, 2010. Dobbs represented to

8  Parsons that he qualified regardless because Parson could apply for early retirement

9  before August 1, 2010, obtain an allowed three-month deferral of his early retirement-

10  pension-benefit-starting date, and be 55 in time to receive his first benefit check on

11  November 1, 2010. Based on Dobb's representation, Parsons submitted his application for

12  an early retirement pension, and retired July 31, 2010.

13      A while after Parsons retired, Dobbs phoned and informed him that because he was

14  not yet 55 when he had submitted his pension application, he did not qualify for the

15  grandfather provision and his benefit amount would be calculated under the new rule. His

16  benefits under the new rule would result in him receiving $1,900 per month, which is less

17  than half of the $3,959.96 per month amount he had been led to believe he would receive.

18      Parsons appealed to the Trustees and was denied. Parsons, thereafter, informed

19  Zenith that he did not intend to continue with the retirement application process. When

20  Parsons returned to work, he was forced to take a lower level position causing him to suffer

21  significant wage loss.

22

23                          **I. Whether the Lawsuit is Timely**

24      The Trustees move to dismiss Parsons' Complaint for being untimely under the

25  provisions of the Plan document. 29 U.S.C. § 1133 requires that ERISA plans provide a

26  procedure for Plan beneficiaries to appeal denial of benefits. In this case, the Plan

4

document states "the applicant will have ninety (90) days after completing the appeals process and being denied to file suit." First Amended Complaint, Ex. 1 Part 2 at RP 50 (15.10). The Trustees assert that where an ERISA plan contains a provision limiting time allowed to file a lawsuit following an appeal denying benefits, it is enforceable and binding on the participants. *Northlake Regional Medical Center v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). Courts have found periods as short as 45 and 90 days to be reasonable. *Davidson v. Wal–Mart Assocs. Health & Welfare Plan,* 305 F.Supp.2d 1059 (S.D.Iowa 2004). Other District Courts in the Ninth Circuit have held that limitation periods specified by plans are valid and enforceable unless they are unreasonable. *Spinedex Physical Therapy, U.S.A., Inc. v. United Healthcare of Arizona*, Inc., CV-08-00457-PHX-ROS, 2012 WL 8169880 (D. Ariz. Oct. 19, 2012) (citing *Sousa v. Unilab Corp. Class II (Non–Exempt) Members Group Benefit Plan*, 252 F.Supp.2d 1046, 1055 (E.D.Cal.2002)). However, the Ninth Circuit has yet to adopt the rule that limitation provisions in Plan documents are binding on the participants. Section 1113(b) of Title 29 of the U.S. Code allows Plan beneficiaries three years from the earliest date of knowledge of the breach of fiduciary duty to file a complaint.

Parsons counters that his suit is not barred by the 90-day provision in the Plan because he is not appealing a decision of the Board, but is instead suing them for breach of a fiduciary duty. Parsons points out his assertion, in a footnote in his complaint, that he is not contesting the Trustees' decision to deny him benefits under the grandfather provision.

Whether Parsons' complaint is timely presents a close question. Though Parsons asserts he is not appealing the decision of the Trustees, the underlying factual basis of his complaint concerns that very decision. But for the Trustees' decision to deny Parsons an early retirement benefit under the grandfather provision, this suit could not have been brought.

1    Nevertheless, the Court will not decide this question because, assuming the suit is

2  timely, the defendants are entitled to having this suit dismissed on the merits.

3

4                          **II. Breach of Fiduciary Duty**

5    Congress enacted ERISA to protect participants and beneficiaries of employee

6  benefit plans without discouraging employers from offering such plans. *Bins v. Exxon Co.*,

7  220 F.3d 1042, 1047 (9th Cir. 2000) (quoting (*Varity Corp. v. Howe*, 516 U.S. 489, 497

8  (1996)). ERISA establishes "standards of conduct, responsibility, and obligations for

9  fiduciaries," and provides plan participants and beneficiaries with "appropriate remedies . .

10 . and ready access to the Federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b)(quoted in

11 *Varity*, 516 U.S. at 513). Pursuant to 29 U.S.C. § 1104(a)(1)(B), a statutory duty is created

12 requiring that a "fiduciary shall discharge his duties . . . with the care, skill, prudence, and

13 diligence under the circumstances then prevailing that a prudent man acting in a like

14 capacity and familiar with such matters would use in the conduct of an enterprise of like

15 character and with like aims." Based largely on the statutory duty of loyalty, federal courts

16 acting under ERISA have imposed a duty of truthfulness and completeness in

17 communicating with participants and beneficiaries about the plan. 29 U.S.C. § 1104(a)(1);

18 *Varity*, 516 U.S. at 504. A claim for misrepresentation against an ERISA fiduciary exists

19 where the plaintiff establishes that: (i) the defendant was acting as a plan fiduciary; (ii) the

20 defendant made misrepresentations; (iii) the misrepresentations were material; and (iv) the

21 plaintiff relied on the misrepresentations to his detriment. *Carr v. International Game*

22 *Technology*, 53 Employee Benefits Cas. 2354, 2 (D. Nev. March 16, 2012) (citing *In re*

23 *Computer Sciences Corp. Erisa Litigation*, 635 F. Supp.2d 1128, 1140 (C.D. Cal. 2009)).

24 The Ninth Circuit requires ERISA misrepresentation claims to be pleaded with particularity.

25 *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

26

(i) Whether Defendant Acted as a Plan Fiduciary

Parsons has the burden of showing that Zenith was acting as a Plan fiduciary or delegated agent of the Trustees when Dobbs communicated with Parsons regarding retirement eligibility and that the Trustees breached a fiduciary duty by not interpreting ambiguous language. ERISA expressly limits liability for fiduciary breach to ERISA fiduciaries. *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004). To qualify as an ERISA fiduciary, an individual or entity must either be named or designated as a fiduciary under the terms of an ERISA plan or act as a "functional" fiduciary with respect to an ERISA plan by exercising discretionary control over the management or administration of the plan or its assets.  29 U.S.C. §1102(a); 29 U.S.C. § 1002(2)(1)(A).  ERISA fiduciaries may be held liable as such only "to the extent" that they exercise discretionary control over the management or administration of a plan or its assets. 29 U.S.C. §1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Therefore, to qualify as a fiduciary, a plan administrator must have the discretion to interpret provisions of the plan document and to make final decisions, even in the face of dispute, as to eligibility and benefits. *Chaganti v. Ceridian Benefits Services*, Inc., 208 Fed.Appx. 541, 547 (9th Cir. 2006) (citing *IT Corp. v. General American Life Ins.*, 107 F.3d 1415 (9th Cir. 1997)).

Parsons alleges that Zenith had discretionary authority and responsibility by virtue of the Contract and the Plan description document ("Description"). As per the terms of the Contract, Zenith provided "certain administrative services for the operation of the Trust (and its associated benefit plan)." First Amended Complaint, Ex.2 at 1. The Contract provides that,

> "[t]he Administrator [Zenith Administrators, Inc.] shall have the authority and responsibility for general administration and day to day operation of the Trust and Plan, as specified in this Agreement . . . [s]pecifically, and not by way of limitation, the Administrator shall receive and process employer contributions, pay benefits on behalf of the Trust, and prudently and appropriately document and record all transactions relating thereto."

7

1    The authority given to Zenith through the Contract was not a delegation of

2    discretion to make final decisions. The Contract listed Zenith's authority as managing

3    the operations of the Trust such as accepting paperwork, distributing information, and

4    managing files. While the Contract granted Zenith authority to perform administrative

5    functions necessary to operating the Plan, it did not specifically delegate authority to

6    make final decisions regarding eligibility or interpretation. However, Zenith does not

7    controvert Parsons' allegations that Dobbs was acting in a fiduciary function.

8

9                    (ii) Whether Defendant Made Misrepresentations

10    To participate knowingly and significantly in deceiving a plan's beneficiaries in order

11   to save the employer money at the beneficiaries' expense is not to act "solely in the interest

12   of the participants and beneficiaries." *Varity*, 516 U.S. at 506. Trust law imposes a duty,

13   when dealing with the beneficiary on the trustee's own account, "to communicate to the

14   beneficiary all material facts in connection with the transaction *which the trustee knows or*

15   *should know*." *Mathews v. Chevron Corp*., 362 F.3d 1172, 1183 (9th Cir. 2004)(citing

16   Restatement (Second) of Trusts § 173 cmt. d (1959)(emphasis added)). The Ninth Circuit

17   adopted a rule stating that a fiduciary "may not actively misinform its plan beneficiaries

18   about the availability of future retirement benefits to induce them to retire earlier than they

19   otherwise would. *Wayne v. Pacific Bell*, 238 F.3d 1048, 1051 (9th Cir. 1999) (quoting

20   *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 124 (2nd Cir. 1997)). However, the Ninth

21   Circuit declined to take the duty further by creating liability for negligent misstatements.

22   *Mathews*, 362 F.3d at 1183. Such a standard would be an oxymoronic command not to

23   "negligently actively misinform" and would provide confusing guidance to ERISA fiduciaries.

24   *Id.*

25    Since Parsons' claim is for breach of a fiduciary duty by misrepresentation, Parsons

26   must show that the statement was a misrepresentation because Dobbs had a duty to know

1   the correct interpretation of "eligible for early retirement." Under Ninth Circuit precedent in

2   *Mathews*, whether Dobbs actively misrepresented or negligently misstated depends on

3   Dobbs' duty to know the correct interpretation. The factual bases for Parsons' allegations

4   must show not just that Dobbs' statement was incorrect, but that Dobbs had a duty to know

5   the correct interpretation.

6          The Plan Description names Zenith six times. The first two times, Zenith is named

7   as the Administrative Office along with their contact information. First Amended Complaint,

8   Ex. 1 Part 1 at RP 2-3. The third and fifth times, the Description directs Plan beneficiaries

9   to contact Zenith to obtain an application for benefits. *Id.* at RP 21 and 23. The fourth time,

10  Zenith is named as an agent for service of legal process. *Id.* at RP 22. None of the

11  previous mentions of Zenith in the Description indicate that Zenith has a duty to know or

12  interpret the Plan. The controversy occurs with the sixth mention of Zenith in the

13  Description. The Description instructs Plan beneficiaries to complete and return the

14  application to the Administrative Office [Zenith], and  "a person in the Administrative Office

15  will review with you the different ways you may receive your retirement benefit." *Id.* The

16  Description then instructs Plan beneficiaries "if you have questions about your benefits or

17  how to make the application, contact the Administrative Office." *Id.* While this provision

18  states that Zenith had the responsibility to answer questions and review options concerning

19  Plan benefits, the controversy is whether this is sufficient to delegate a duty to know the

20  correct interpretation. The Ninth Circuit has held that communicating with beneficiaries

21  about "their rights and [] options under the plan" is not a fiduciary act. *CSA 401(K) Plan v.*

22  *Pension Professionals, Inc.*, 195 F.3d 1135, 1139n.2 (9th Cir. 1999) (quoting Section

23  2509.75-8 of the Department of Labor regulations). Since communicating with beneficiaries

24  regarding their rights and options is not a fiduciary act, delegating the responsibility to

25  communicate cannot be a delegation of fiduciary duty.

26

1    Parsons offers the Contract as further evidence of Zenith's or Dobbs' duty to know.

2  The Contract states that "[the] Administrator [Zenith] shall have the authority and

3  responsibility for general administration and day to day operation of the Trust and Plan, . . .

4  [s]pecifically, and not by way of limitation, the Administrator shall receive and process

5  employer contributions, pay benefits on behalf of the Trust, and prudently and appropriately

6  document and record all transactions relating thereto." First Amended Complaint, Ex. 2 at

7  Art. 2.1. This article of the Contract provides Zenith with authority and responsibility for

8  managing the business of the Trust, but is not a delegation of authority to interpret the Plan

9  or a duty to know the correct interpretation of the Plan. It only delegates the authority to

10 manage the business of the Trust.

11    Parsons alleges that he met with Dobbs because he did not know what the Board

12 meant by "eligible for early retirement" as used in the Notice. However, the last

13 sentence of that Notice states, "if you have any questions about this [Notice], please

14 write to the Trustees." First Am. Complaint, Ex. 3 RP 63. The writing in the Notice

15 granted only the Trustees the ability to answer questions regarding the Notice. The

16 Notice does not indicate that Dobbs or Zenith would be able to interpret the Plan with

17 authority.

18    The Plan document does not establish that Dobbs or Zenith had any duty to know

19 the correct interpretation of the Plan. The Plan document states:

20    "The Trustees have the exclusive right, power[,] and authority in their sole and
      absolute discretion, to administer, apply[,] and interpret the Plan and all other
21    documents that describe the Plan and Trust Fund."

22 First Amended Complaint, Ex. 1 Part 2 at RP 50, 15.2. The Plan document clearly names

23 the Trustees as having sole discretion and authority to interpret the Plan. Neither Dobbs

24 nor Zenith is named at all in the Plan document or given a duty to interpret or know the

25 Plan.

26

1    The plaintiff alleges in his First Amended Complaint ¶ 46 that Dobbs' statement may

2    have been mistaken. First Amended Complaint at ¶ 46. Mistaken implies that Dobbs was

3    giving an opinion and did not have authority to interpret the Plan. Under Ninth Circuit

4    precedent set forth in *Mathews*, without the authority to interpret, Dobbs' statement would

5    be, at most, a negligent misstatement The Ninth Circuit declined to extend liability for

6    negligent misstatements. Parsons has failed to show that Zenith or Dobbs made an active

7    misrepresentation.

8

9                        (iii) Whether the Misrepresentations were Material

10    ERISA has an elaborate scheme in place for enabling beneficiaries to learn their

11    rights and obligations at any time, a scheme that is built around reliance on the face of

12    written plan documents. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995).

13    Because §1102 provides that "[e]very employee benefit plan shall be established and

14    maintained pursuant to a written instrument," courts have held that oral agreements or

15    modifications cannot be used to contradict or supersede the written terms of an ERISA

16    plan. *Richardson v. Pension Plan of Bethlehem Steel Corp*., 112 F.3d 982, 986 (9th Cir.

17    1997). The ERISA writing requirement protects a plan's actuarial soundness by precluding

18    plan administrators from contracting to pay benefits to persons not entitled to them under

19    the express terms of the plan. *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822

20    (9th Cir. 1992). A plaintiff cannot avail himself of a federal ERISA estoppel claim based

21    upon statements of a plan employee which would enlarge his rights against the plan

22    beyond what he could recover under the unambiguous language of the plan itself. *Id.*

23    Parsons alleges that Dobbs' statement was material in his decision to retire early.

24    Without Dobbs' statement regarding his eligibility, Parsons would not have retired. Parsons

25    never alleges that he referenced the Plan document in his decision. Under the precedent

26    set by the Supreme Court and Ninth Circuit in previous ERISA cases, Dobbs could not

11

1   make an oral agreement that superseded or contradicted the express written terms of the

2   Plan document. Parsons alleges that Dobbs' statement was a reasonable interpretation

3   based on the Description and Notice. However, the Supreme Court has held that

4   descriptions "provide communication about the plan, but that their statements do not

5   themselves constitute the terms of the plan. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1878

6   (2011). Parsons must present a factual basis showing that "eligible for early retirement" as

7   used in the Plan document is ambiguous, and Dobbs' statement was a reasonable

8   interpretation. The Plan document defines eligible for early retirement as:

9       "A Participant may retire on the first day of any month before the Normal
        Retirement Date if the Participant has:

10      A.  Attained at least age 55, and
        B.  Has ten years of Credited Past and Future Service of which at least two

11          years must be Credited Future Service.

12   First Amended Complaint, Ex. 1 Part 2 at RP 33, 4.03. Later in the same article, the Plan

13   document states that the early retirement date becomes the "Pension Benefit Starting

14   Date." *Id.* at RP 34. The express written terms of the Plan document clearly define early

15   retirement not as a process but a date that is synonymous with the start of receiving

16   benefits. Therefore, Parsons has not shown a factual basis that "eligible for early

17   retirement" as written in the Plan document was ambiguous.  As a result, he necessarily

18   cannot show that Dobbs' statement was a reasonable interpretation of the non-existent

19   ambiguity.

20

21                  (iv) Whether Plaintiff Relied on the Representations to his Detriment

22          The Ninth Circuit has established that a Plan beneficiary may recover benefits under

23   the equitable estoppel only if they can show a reasonable and detrimental reliance on the

24   representations of the fiduciary. *Pisciotta v. Teledyne Industries, Inc*., 91 F.3d 1326, 1331

25   (9th Cir. 1996). However, the Supreme Court held that a fiduciary can be surcharged under

26

§502(a)(3) only upon showing of actual harm – proved (under the default rule for civil cases) by a preponderance of the evidence. *CIGNA*, 131 S. Ct. at 1883.

Parsons has shown that he was harmed by his reliance on Dobbs' statement. Parsons terminated his employment as head flyman under the assumption that his benefits would be calculated under the old rule. Under the old rule, Parsons would have been entitled to a monthly pension of $3,959.96. Under the new rule, Parsons was entitled to a monthly pension of only $1,900 or less than half the amount calculated under the old rule. Parsons stated that he would not be financially able to live on the monthly pension calculated under the new rule. He returned to employment, but could not get a job at an equal level to his previous employment. He has shown financial harm. Defendants do not dispute that Parsons suffered harm as a result of his relying on the statement made by Dobbs.

In conclusion, the Ninth Circuit requires that claims of misrepresentation be pleaded with particularity. Parsons has not shown a factual basis establishing all the elements necessary to a claim for misrepresentation. Parsons has failed to show that the statement by Dobbs was a misrepresentation or that the misrepresentation was material.

As for Parsons' allegation that the Trustees breached fiduciary duty by not informing him that he did not qualify for the grandfather clause, 29 USC §1140 makes it unlawful for the plan sponsor or any other person to discriminate against any person seeking to exercise their rights under the plan. Parsons can exercise his rights by applying for retirement at anytime. The Trustees do not have a duty to prevent Parsons from applying for retirement.

In order for Parsons to show that the Trustees breached a co-fiduciary duty, he must show that Zenith was acting as a Plan fiduciary or delegated agent of the Trustees when Dobbs communicated with Parsons regarding retirement eligibility.

1    Parsons must first state one or more valid claims for breach of fiduciary duty under
2    ERISA before he may allege a claim for breach of duties and responsibilities as co-
3    fiduciaries. *Carr*, 770 F.Supp.2d at 1096. ERISA expressly limits liability for fiduciary breach
4    to ERISA fiduciaries. *Wright*, 360 F.3d at 1102. ERISA fiduciaries may be held liable as
5    such only "to the extent" that they exercise discretionary control over the management or
6    administration of a plan or its assets. 29 U.S.C. §1002(21)(A); *Pegram*, 530 U.S. at 225-26.
7    Therefore, in the Ninth Circuit, to qualify as a fiduciary, a plan administrator must have the
8    discretion to interpret provisions of the plan document and to make final decisions, even in
9    the face of dispute, as to eligibility and benefits. *Chaganti*, 208 Fed.Appx. at 547 (citing *IT*
10   *Corp. v. General American Life Ins*., 107 F.3d 1415 (9ᵗʰ Cir. 1997)). Communicating with
11   beneficiaries about "their rights and . . . options under the plan" is not a fiduciary act.
12   *Pension Professionals*, 195 F.3d at 1139 n.2 (quoting Section 2509.75-8 of the Department
13   of Labor regulations). Thus, in every case charging breach of ERISA fiduciary duty, the
14   threshold question is not whether the actions of some person providing services under the
15   plan adversely affected a beneficiary's interest, but whether that person was performing a
16   fiduciary function when taking the action subject to complaint. *Pegram*, at 226. A
17   defendant's fiduciary status under ERISA may be decided on a motion to dismiss. *Wright*,
18   360 F.3d at 1101-02.

19   To show that the Trustees breached a co-fiduciary duty, Parsons must show that
20   Dobbs was performing a fiduciary function when he met with Parsons to discuss his
21   eligibility. Neither Zenith nor Dobbs is named as a fiduciary by the Plan document. As
22   previously discussed, Parsons has not shown that Dobbs had the duty to know the correct
23   interpretation and also that Dobbs was performing a fiduciary act. Parsons' allegation rests
24   on the assertion that Dobbs was performing a fiduciary act when he advised Parsons that
25   he met the eligibility requirement. If Dobbs was not performing a fiduciary act, Parsons
26   cannot bring a claim for breach of co-fiduciary duty against the Trustees.

### III. Equitable Estoppel

Parsons prays for equitable relief pursuant to 29 USC § 1132(a)(3) and that Zenith and the Trustees be estopped from denying the oral representations made to Parsons. Section 1132(a)(3) provides for a plan participant to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has interpreted the term "appropriate equitable relief" in §1132(a)(3), as referring to those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity. *CIGNA*, 131 S. Ct. at 1878. Courts should consider (A) whether surcharge and estoppel are remedies available under § 502(a)(3); and (B) whether, based on the facts, the plaintiff can establish an equitable basis for surcharge or estoppel. *Amara v. CIGNA Corp.*, – F.Supp.2d --, 84 Fed.R.Serv.3d 422 (D. Conn. Dec. 20, 2012).

### (i) Surcharge and Estoppel Available

When considering equitable remedies in regard to the Supreme Court's holding in *CIGNA*, attention should be given to the argument raised by Justice Scalia in his concurrence that the Supreme Court's pronouncement about the availability of surcharge, reformation, and estoppel under ERISA § 502(a)(3) as "blatant dictum." *CIGNA,* 131 S.Ct. at 1884 (Scalia, J., concurring). Justice Scalia cautioned:

> "The Court's discussion of the relief available under § 502(a)(3) and *Mertens* is purely dicta, binding upon neither us nor the District Court. The District Court need not read any of it—and, indeed, if it takes our suggestions to heart, we may very well reverse."

*Id.* at 1876; *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993). Other federal courts citing *CIGNA* have tended to agree that the Supreme Court's discussion of the availability

1   of surcharge and estoppel under § 502(a)(3) is dicta. *Amara*, – F. Supp.2d at --; *See, e.g.,*
2   *Sergent v. McKinstry,* 472 B.R. 387, 412 (E.D.Ky.2012); *Biglands v. Raytheon Emp. Sav. &*
3   *Inv. Plan,* 801 F.Supp.2d 781, 786 (N.D.Ind.2011); *N. Cypress Med. Ctr. Operating Co. v.*
4   *CIGNA Healthcare,* No. 4:09–CV–2556, 2011 WL 5325785, at *9 (S.D.Tex. Nov. 3, 2011).
5   The Ninth Circuit also acknowledged that the discussion of estoppel and surcharge in
6   *CIGNA* is dicta. *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1165 (9th
7   Cir. 2012).

8          Normally, the doctrine of equitable estoppel is available to an ERISA plaintiff,
9   assuming the plaintiff can meet a five-pronged test. *Greany*, 973 F.2d at 821-22. However,
10  Ninth Circuit precedent states that an equitable estoppel argument is not available to an
11  ERISA plaintiff where the ERISA plan at issue is a trust fund, and recovery would contradict
12  the written terms of the plan. *Kessler v. ADT Sec. Servs., Inc.*, 33 F. App'x 850, 852 (9th Cir.
13  2002) (citing *Greany*, 973 F.2d at 822. Section §1132(a)(3) "does not, after all, authorize
14  'appropriate equitable relief' *at large*, rather, it countenances only such relief as will enforce
15  "*the terms of the plan*" or the statute. *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537,
16  1548 (2013)(quoting *Mertens*, 508 U.S. at 253). Also, the Supreme Court has held that a
17  plaintiff could seek restitution *in equity*, where money belonging to the plaintiff can be
18  traced to particular funds or property in the defendant's possession. *Great–West Life &*
19  *Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (citing Restatement of Restitution §
20  160, Comment a, pp. 641-642 (1936)). Nevertheless, where "the property [sought to be
21  recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's]
22  claim is only that of a general creditor." *Id.*; *Bilyeu v Morgan Stanley Long Term Disability*
23  *Plan*, 683 F.3d 1083, 1095 (9th Cir. 2012) (quoting *CIGNA*, 131 S. Ct. at 1879). The action
24  generally must seek not to impose personal liability on the defendant, but to restore to the
25  plaintiff particular funds or property in the defendant's possession. *Id.* at 213-14. "[T]he fact
26

that this relief takes the form of a money payment does not remove it from the category of

traditionally equitable relief." *CIGNA*, 131 S.Ct. at 1880.

Parsons' prayer for equitable relief is to be made whole through compensation for

the losses he suffered to his future rights by surcharging the Trustees and Zenith for the

difference between what Parsons will earn and what he would have earned had he not

been induced into retiring. He also seeks the difference between what he will contribute to

the Plan and what he would have contributed had he not been induced to retire. Parsons

claims that this type of remedy is available because he is not seeking past damages, but to

be reinstated to a right that he would have possessed had he not been induced into

retirement. He cites *CIGNA* to show that, although he is asking for relief in the form of

money payment, this does not remove it from the category of equitable relief. However, the

discussion of equitable estoppel and surcharge in *CIGNA* has been considered dicta by the

Ninth Circuit and is not binding on this Court.

Parsons must show that his claim for equity is not in contradiction to the written

terms of the Plan. The Plan at issue is an ERISA plan and a trust fund, so under the

Supreme Court's ruling in *McCutchen*, appropriate equitable relief is not available at large;

Parsons must show that this type of relief will enforce the written terms of the Plan. Further,

Parsons must show a factual basis that Zenith and the Trustees have possession of a

particular fund or property that is rightfully his. If Parsons' claims are only to impose

personal liability on the defendants, then he seeks money damages. Parsons has made no

claim to a particular fund or property. His claim is for compensation for future losses. Since

there is no particular fund in Zenith's or the Trustees' possession to be transferred to

Parsons, this remedy imposes personal liability on Zenith and the Trustees. Further,

Parsons alleges "he does not contest in this litigation the Board's interpretation of the Plan

or decision that Parsons is not entitled to have his benefits calculated under the old rule

pursuant to that interpretation." First Amended Complaint, Doc. 30 at n.3. The relief that

1    Parsons seeks is not to enforce the written provisions of the Plan, but to compensate him

2    for wages that he will not earn. That is not proper equitable relief under ERISA.

3

4                          (ii) Factual Basis for Estoppel or Surcharge

5           A beneficiary may recover benefits under ERISA based on an equitable estoppel

6    theory, if he shows: (1) a material misrepresentation; (2) reasonable and detrimental

7    reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the

8    plan at issue are ambiguous, such that reasonable persons could disagree as to their

9    meaning or effect; and (5) the representations must have been made to the beneficiary

10   involving an oral interpretation of the plan. *Pisciotta*, 91 F.3d at 1331. Moreover, a

11   beneficiary cannot obtain recovery on the basis of estoppel "in the face of contrary, written

12   plan provisions." *Renfro*, 686 F.3d at 1054 (citing *Davidian v. S. California Meat Cutters*

13   *Union and Food Employees Ben. Fund,* 859 F.2d 134, 134 (9th Cir. 1988)).

14

15                          (1) *Material Misrepresentation*

16          As discussed previously, §1102 provides that "[e]very employee benefit plan shall be

17   established and maintained pursuant to a written instrument," and courts have held that

18   oral agreements or modifications cannot be used to contradict or supersede the written

19   terms of an ERISA plan. *Richardson*, 112 F.3d at 986. A plaintiff cannot avail himself of a

20   federal ERISA estoppel claim based upon statements of a plan employee, which would

21   enlarge his rights against the plan beyond what he could recover under the unambiguous

22   language of the plan itself. *Greany*, 973 F.2d at 822. Parsons failed to present a factual

23   basis showing that "eligible for early retirement" as used in the Plan document is

24   ambiguous. The express written terms of the Plan document clearly define early retirement

25   not as a process but a date that is synonymous with the start of receiving benefits. Parsons

26

                                              18

1  is not entitled to equitable relief in contradiction to the express written terms of the Plan

2  document.

3

4  (2) *Reasonable and Detrimental Reliance*

5  A fiduciary can be surcharged under §502(a)(3) only upon showing of actual harm –

6  proved (under the default rule for civil cases) by a preponderance of the evidence. *CIGNA*,

7  131 S. Ct. at 1883. That actual harm may sometimes consist of detrimental reliance, but it

8  might also come from the loss of a right protected by ERISA or its trust-law antecedents.

9  *Id.* To obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or

10  beneficiary must show that the violation injured him or her. *Id.* But to do so, he or she need

11  only show harm and causation. *Id.* Although it is not always necessary to meet the more

12  rigorous standard implicit in the words "detrimental reliance," actual harm must be shown.

13  *Id.* at 1883-84.

14  As previously discussed, Parsons has shown that he was harmed by his reliance on

15  Dobbs' statement. Defendants do not dispute that Parsons suffered harm as a result of his

16  relying on the statement made by Dobbs.

17

18  (3) *Extraordinary Circumstances*

19  Parsons has not shown any factual basis for extraordinary circumstances. The Ninth

20  Circuit does not have a set precedent on what constitutes extraordinary circumstances, and

21  this Court declines to find that the present set of facts as alleged by Parsons amounts to

22  extraordinary circumstances.

23

24  (4) *Ambiguous Provisions*

25  "[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the

26  interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

1   101, 115 (1989). The intended meaning of even the most explicit language can only be

2   understood in the light of the context that gave rise to its inclusion. *McDaniel v. Chevron*

3   *Corp.*, 203 F.3d 1099 (9th Cir. 2000). In order to allege a claim for equitable estoppel, the

4   provisions of the plan at issue must be ambiguous such that reasonable persons could

5   disagree as to their meaning or effect. *Pisciotta*, 91 F.3d at 1331 (citing *Greany*, 973 F.2d

6   at 821). Otherwise, courts assign meaning to the terms "in an ordinary and popular sense

7   as would a [person] of average intelligence and experience," and will not "artificially create

8   ambiguity where none exists." *Deegan v. Continental Cas. Co*., 167 F.3d 502, 507 (9th Cir.

9   1999) (citing *Evans v. Safeco Life Ins. Co*., 916 F.2d 1437, 1441 (9th Cir. 1985)). Whether

10  the terms of a plan are plain or ambiguous is a matter of law. *McDaniel*, 203 F.3d at 1110.

11          Parsons must show a factual basis indicating that "eligible for retirement" as used in

12  the Plan is ambiguous. Parson alleges that he did not know what the Trustees meant by

13  "eligible for retirement". He further alleges that neither the Notice nor the Plan was specific

14  as to the whether "eligible for retirement" meant eligible to *apply* for retirement before

15  August 1, 2010 or whether it meant eligible to *receive* retirement benefits before August 1,

16  2010. Parsons offers two dictionary definitions for retirement – (1) the "act of retiring" or (2)

17  the "state of being retired." Merriam Webster's Collegiate Dictionary 1064 (Frederick C.

18  Mish ed., 11th ed., Merriam-Webster, Inc. 2003). The former indicates a process whereas

19  the latter indicates a state of being. Parsons alleges that the two definitions show that

20  "retirement" is dichotomous and that "eligible for retirement" could reasonably mean eligible

21  to *apply* for retirement within the "act of retiring" definition. However, as indicated by Ninth

22  Circuit precedent, the dictionary is a helpful tool of interpretation, but it is the context of the

23  Plan that gives the weightier definition.

24          Use of "retirement" within the written plan document is more consistent with the

25  "state of being" definition. As previously noted, the Plan document defines eligible for early

26  retirement:

"A Participant may retire on the first day of any month before the Normal
Retirement Date if the Participant has:
    A.  Attained at least age 55, and
    B.  Has ten years of Credited Past and Future Service of which at
        least two years must be Credited Future Service.

First Amended Complaint, Ex. 1 Part 2 at RP 33, 4.03. Later in the same article, the Plan

document states that the early retirement date becomes the "Pension Benefit Starting

Date." *Id.,* at RP 34. According to the express written terms of the Plan document, early

retirement is not a process but a date that is synonymous with the start of receiving

benefits. The written terms of the plan are not ambiguous. Parsons' dictionary definitions

are an artificial construction of ambiguity.  Therefore, Parsons has not shown a factual

basis that "eligible for early retirement" was ambiguous and that Dobbs' statement was a

reasonable interpretation.


(5) *Oral Interpretation*

     ERISA equitable estoppel is limited to situations where the wronged party can prove

(a) the provisions of the plan at issue are ambiguous and (b) oral representations

interpreting the plan were made to the employee. *Qualls By and Through Qualls v. Blue

Cross of California, Inc*., 22 F.3d 839, 845-46 (9th Cir. 1994). However, oral agreements or

modifications cannot be used to contradict or supersede the written terms of an ERISA

plan. *Richardson*, 112 F.3d at 986.

     Parsons failed to show that Dobbs' oral statement was a reasonable interpretation of

the Plan document. Dobbs' interpretation was based on the Notice and the Description.

Parsons' arguments for ambiguity were negated by the express written terms of the Plan

document. Dobbs' oral interpretation cannot supersede the written terms of the Plan

document.

**IV. Negligence**

Parsons' second claim, in the event that Zenith is found not to be a fiduciary, is a negligence claim against Zenith under Nevada law. ERISA includes "expansive pre-emption provisions" that are designed to "ensure that employee benefit plan regulation 'would be exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc*., 451 U.S. 504, 523 (1981)). Consequently, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* Meaning, ERISA's preemptive provisions "defeat state-law causes of action on the merits." *Fossen v. Blue Cross and Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011). Section 514(a) of ERISA, generally "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "A 'law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) 'if it [1] has a connection with or [2] reference to such a plan.'" *California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.,* 519 U.S. 316, 324, (1997) (quoting *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129 (1992)). It is well established that "[a] state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)." *Cleghorn v. Blue Shield of Cal.,* 408 F.3d 1222, 1225 (9th Cir.2005).  Any conflicting state-law claim that could have been brought under section 502(a) and does not implicate a legal duty independent of ERISA, is completely preempted. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 945 (9th Cir.2009) (citing *Davila,* 542 U.S. at 210, 124 S.Ct. 2488). The Supreme Court suggested, in *Pilot Life Insurance Co. v. Dedeaux*, that ERISA's civil enforcement provisions contained in §502 of the Act impliedly preempt all of a plan

22

1   participant's state law remedies in any action asserting improper processing of a claim for

2   benefits. 481 U.S. 41, 57 (1987).The savings clause then exempts from preemption any

3   state law "which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

4   The Ninth Circuit provided the following guidance:

5

6           The key to distinguishing between what ERISA preempts and what it does not lies,
            we believe, in recognizing that the statute comprehensively regulates certain
7           relationships: for instance, the relationship between plan and plan member,
            between plan and employer, between employer and employee (to the extent an
            employee benefit plan is involved), and between plan and trustee. Because of
8           ERISA's explicit language, and because state laws regulating these relationships
            (or the obligations flowing from these relationships) are particularly likely to
9           interfere with ERISA's scheme, these laws are presumptively preempted.

10  *General American Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521 (9th Cir.1993)

11  (internal citations omitted).

12          Parsons bears the burden of showing that his negligence claim against Zenith is not

13  pre-empted by ERISA. Parsons claims that his relationship with Zenith is the result of his

14  being a third-party beneficiary to the Contract between the Trustees and Zenith. He claims

15  that this relationship creates a legal duty independent of the ERISA. Zenith is not named or

16  mentioned in the Plan document, therefore, Parsons alleges that his relationship with

17  Zenith is not a part of the ERISA Plan. Parsons compares his relationship with Zenith to

18  that of a service provider. However, Parsons has offered no factual basis showing that his

19  claim could have arisen without a relationship to the Plan. Zenith did not have any

20  relationship with either Parsons or the Trustees outside ERISA regulation.

21          As previously ruled by this Court, Parsons' reliance on *Paulsen v. CNF Inc*., 559

22  F.3d 1061 (9th Cir.2009) is misplaced. In *Paulsen,* the plan participants' negligence claim

23  against the firm that provided actual services to the plan was not pre-empted. As stated by

24  the court: "The duty giving rise to the negligence claim [ran] from a third-party actuary, i.e.,

25  a non-fiduciary service provider, to the plan participants as intended third party

26  beneficiaries *of the actuary's service contract.*" *Id.,* at 1083 (emphasis added). The

1   provision of actuarial services to a plan is not a relationship regulated by ERISA. While the

2   actuarial firm was a non-fiduciary service provider, the duty arose from the actuary's

3   service contract. Parsons has not alleged any facts suggesting that Zenith's relationship to

4   himself is comparable to that of a third-party beneficiary to an actuarial services contract

5   between an actuarial firm and a plan. Rather, the facts alleged by Parsons in his complaint

6   expressly allege a relationship between Zenith and the plan arising from the management

7   or administration of the plan with respect to a plan participant.

8         Even assuming that Parsons' allegations somehow raise a plausible inference of a

9   non-fiduciary relationship, those same allegations (which are the only allegations permitting

10   an inference of a relationship) require a determination that the relationship is nevertheless

11   regulated by ERISA. As Parsons' negligence claim bears on an ERISA-regulated

12   relationship, it is pre-empted by § 514(a) and must be dismissed.

13

14         Accordingly,

15         THE COURT **ORDERS** that the Trustees' Motion to Dismiss (#33) is GRANTED;

16         THE COURT FURTHER **ORDERS** that Zenith Administrators, Inc.'s Motion to

17   Dismiss (#34) is GRANTED.

18         THE COURT FURTHER **ORDERS** that the Motion for Hearing (#41) is DENIED as

19   moot.

20

21   DATED this _____ day of September, 2013.

22

23                                                      _____

                                                        Lloyd D. George
24                                                      United States District Judge

25

26